**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **IN RE SUBPOENA ISSUED TO COMMODITY FUTURES TRADING COMMISSION** |

**Miscellaneous Action No. 04-564 (JDB)**

<u>**MEMORANDUM OPINION**</u>

WD Energy Services ("WD Energy") is one of many energy companies that came under investigation by the Commodity Futures Trading Commission ("CFTC") several years ago for their natural gas trading activities.  In 2003, E. & J. Gallo Winery ("Gallo") brought an action in the United States District Court for the Eastern District of California against WD Energy over its alleged manipulation of energy prices.  Gallo subsequently served the CFTC with a subpoena seeking documents that the CFTC had collected from WD Energy and several other energy companies in the course of its investigations.  WD Energy and the other energy companies then commenced this action to contest the subpoena, and Gallo has responded with a motion to compel.

In this Memorandum Opinion, the Court addresses the only issues that remain with regard to CFTC documents collected from WD Energy:  first, should this Court give preclusive effect to a Magistrate Judge's decision in the underlying Eastern District of California litigation ruling that the same documents in the possession of WD Energy were protected from disclosure by a federal settlement privilege; and second, should this Court itself recognize a settlement privilege under federal law that would protect these documents from disclosure.  Because the Court answers both

of these questions in the negative, it grants Gallo's motion to compel with regard to the documents

as to which WD Energy has challenged production on the basis of a putative settlement privilege.

## **BACKGROUND**

This action arises out of a federal investigation into alleged market manipulation of the

energy industry.  In June 2002, the CFTC informed WD Energy that it was part of the

investigation, and requested information relating to its energy trading activities.  In the course of

the investigation, WD Energy provided the CFTC with requested records that existed prior to the

commencement of the CFTC inquiry, as well as new records that it created as the investigation

progressed to address concerns raised by the CFTC in the course of its investigation.  Decl. of

Douglas John, Feb. 25, 2005, ¶¶ 3-5.  The CFTC investigation of WD Energy was resolved on

July 28, 2003, when the CFTC and WD Energy stipulated to an order in which WD Energy did

not admit any wrongdoing but agreed to pay a civil penalty of $20,000,000.  See In the Matter of:

WD Energy Services Inc., CFTC Docket No. 03-20.

### A.     **The Underlying Litigation**

On April 9, 2003, Gallo -- a wine producer and one of the largest consumers of natural gas

in the State of California -- commenced an action against Encana Energy Services, Inc. and

Encana Corp. (collectively "Encana", the predecessor company to WD Energy) in the United

States District Court for the Eastern District of California.  The suit seeks damages for WD

Energy's alleged manipulation of natural gas prices in California through sham trades, false

reporting of trade data, and other claimed forms of misconduct.  That action is nearing the end of

discovery, with Gallo having issued several discovery requests and WD Energy having produced

hundreds of thousands of pages of documents in response.  However, WD Energy refused to

produce several categories of documents, including all documents that it created and provided to the CFTC for the purposes of facilitating a settlement of the CFTC investigation on the theory that those documents are protected by a "settlement privilege." On January 10, 2005, Gallo filed a motion to compel production of those documents.

On January 28, 2005, Magistrate Judge Lawrence J. O'Neill of the United States District Court for the Eastern District of California issued an order holding that "[d]isclosure of the CFTC documents would likely chill settlement discussions and thwart tribunal efficiencies and public interests" and that the documents are therefore protected from disclosure by a settlement privilege. Decl. of Barbara L. Lyons, Feb. 10, 2005, Ex. D, at 7.  Responding to a request for clarification, Magistrate Judge O'Neill wrote a letter on February 23, 2005, affirming that based on "WD Energy's representations that it created and provided the CFTC certain documents to reach settlement, this Court in its January 28, 2005 order recognized and applied the settlement privilege to such documents." Decl. of Eric Maier, Feb. 25, 2005, Ex. B, at 1-2.  As far as this Court is aware, Gallo has never filed an objection to Magistrate Judge O'Neill's order to the District Judge presiding in that case.

### B.      The CFTC Subpoena and the Present Action

Meanwhile, on October 22, 2004, Gallo had issued a subpoena to the CFTC requesting all documents that the CFTC had collected from WD Energy and nine other energy companies in the course of the CFTC's energy trading investigations.  The CFTC informed Gallo that the CFTC would be unable to comply with the subpoena by the November 16, 2004, deadline stated in the subpoena.  Gallo and the CFTC agreed to an indefinite postponement of the subpoena.  On December 2, 2005, the CFTC notified the energy companies of the subpoena.  Two weeks later,

on December 16, 2005, each of the energy companies filed objections to the subpoena in this

Court. The energy companies contested the subpoena on several grounds, among them that the

documents requested in the subpoena are protected by the investigative privilege, the federal

settlement privilege and the self-critical analysis privilege, and that the subpoena seeks irrelevant

and confidential or proprietary information.

The CFTC moved this Court to stay its review of the energy companies' objections until

the CFTC had completed its own review of the subpoenaed documents. At a hearing on the

motion to stay, Gallo agreed not to insist on production of the documents originating from seven

of the ten energy companies, leaving only the documents of WD Energy, Duke Energy Corp.

("Duke Energy"), and Reliant Energy, Inc. ("Reliant Energy") at issue. The Court also set a

schedule at the hearing for briefing on the objections raised by the energy companies. The

schedule was somewhat more accelerated than the one requested by the CFTC in its motion to

stay, and gave an opportunity to Gallo to file a formal motion to compel, the CFTC to file a

position statement in response, WD Energy and the other two remaining energy companies to file

a response of their own, and Gallo and the CFTC to file reply papers. Finally, the CFTC was

required to begin producing documents that were not in dispute within 30 days of the order setting

out the schedule.

Consistent with this schedule, on February 11, 2005, Gallo filed a motion to compel that

addressed many of the objections the energy companies had identified in their initial papers. On

February 18, 2005, the CFTC submitted a position statement explaining that it would not assert

any governmental privileges at that time, and that it did not oppose production of the documents

in its possession, but that it would defer taking a position on the question of a settlement privilege

until the energy companies asserting the privilege had identified the particular documents they

believed it protected.  On February 25, 2005, WD Energy (on the one hand), and Duke Energy and

Reliant Energy (on the other) filed papers that narrowed the grounds on which they objected to the

subpoena.

WD Energy argued only that a "small group" of documents should be withheld from Gallo

on the basis of the same federal settlement privilege recognized by Magistrate Judge O'Neill in the

underlying litigation (although WD Energy did not at that time identify the documents it believed

were covered by the privilege).  WD Energy's Mem. Resp. Motion Compel at 1.  Duke Energy

and Reliant Energy did not claim a settlement privilege at all, arguing instead that the documents

Gallo requested comprised confidential commercial information; that Gallo's subpoena was

overbroad in that it sought much information that is irrelevant to Gallo's underlying litigation; and

that Gallo had not shown "substantial need" for the documents under Federal Rule of Civil

Procedure 45(c).

The CFTC submitted a reply brief in which it argued (among other things) that the Court

need not defer to the order of Magistrate Judge O'Neill recognizing a federal settlement privilege;

that the Court should not recognize such a privilege itself; and that it was not clear to the CFTC

that any of the documents at issue in the subpoena would be covered by any such privilege.  Mem.

of CFTC in Resp. at 6.  Gallo filed its own reply making similar points.  On March 11, 2005, the

Court held a hearing on Gallo's motion to compel.  At the hearing -- and at an additional session

on March 21, 2005 -- the Court decided most of the open questions relating to the documents of

Duke Energy and Reliant Energy, and heard argument on the settlement privilege issues pertaining

to the documents of WD Energy, deferring a final decision on those issues for a written opinion.

WD Energy came forward at the hearing for the first time with a list of the nine documents[1] it

believes are governed by the settlement privilege.[2]  See Tr. of Motion Hg., Mar. 11, 2005, at 58-

63.  The questions relating to the remaining WD Energy documents have been fully briefed and

argued, and are ready for decision by the Court.

## ARGUMENT

WD Energy offers two arguments in support of its challenge to the CFTC subpoena as to

the remaining nine documents.  First, it contends that principles of collateral estoppel require the

Court to give binding effect to the decision of Magistrate Judge O'Neill in the Eastern District of

California litigation that a settlement privilege prevents disclosure of the documents at issue.

Second, WD Energy urges this Court itself to recognize a settlement privilege.  For the reasons set

out below, the Court concludes that each of these arguments lacks merit.

## I.    Collateral Estoppel

At the outset, WD Energy contends that this Court must give preclusive effect to the

January 28, 2005, decision of Magistrate Judge O'Neill recognizing a settlement privilege.  The

D.C. Circuit has explained that the "standards for establishing the preclusive effect of a prior

holding are":

---

[1]  It actually appears that there are more than nine documents, as some of the "documents" include multiple drafts and communications.  The documents span a period from February 19, 2003, to at least July 25, 2003, and include documents as varied as spreadsheets containing WD Energy data, hand-written sheets relating to audio tapes, and an "Offer of Settlement."  WD Energy did not offer the documents themselves for in camera review by the Court.

[2]  Before Magistrate Judge O'Neill, WD Energy did not initially limit its assertion of a settlement privilege to these nine documents.  WD Energy explains that it has since chosen to produce all of the other documents for which it initially invoked the privilege.  Tr. of Motion Hg., Mar. 11, 2005, at 68.

First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. . . . See Restatement (Second) of Judgments § 27 (1982) ("[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties"). Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

Yamaha Corp. of America v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992).

The Court has serious doubts whether a discovery order of a Magistrate Judge -- even when, as here, no party has filed a motion to reconsider the order -- is a "final judgment" or "prior holding" for purposes of this Circuit's collateral estoppel rule. See J.P. Stripling v. Jordan Prod. Co., 234 F.3d 863, 868 (5th Cir. 2000) ("We conclude that the magistrate judge's order did not qualify as a final judgment, such that it would provide a preclusive collateral estoppel effect. . . . A magistrate judge's order issued under 28 U.S.C. § 636(b)(1)(A) or § 636(b)(1)(B) only becomes final once the district court makes it final."); United States v. Ward, 808 F. Supp. 803, 818 (S.D. Ga. 1992) ("[T]he case law is clear. A Magistrate Judge's order under 28 U.S.C. § 636(b)(1)(B) is not final and cannot become final merely through lack of objection. In conclusion, there can be no collateral estoppel effect to the April 3, 1992 order of the Magistrate Judge because it is not a final judgment.").[3]

---

[3] WD Energy argues to the contrary by citing Local Rule 72-303(b) of the United States District Court for the Eastern District of California, which states that "rulings by Magistrate Judges shall be final if no reconsideration thereof is sought from the Court within 10 court days." But other courts have considered similar language and rejected the contention that it renders a Magistrate Judge ruling a final order of the District Court, see Myers, 701 F.2d at 1327, and the Ninth Circuit has held specifically in a case arising out of the Eastern District of California that the ruling of a Magistrate Judge is a "final order" for purposes of taking an appeal only when the district court adopts the recommendation of the Magistrate Judge, Reynaga v. Cammisa, 971 F.2d 414, 416 (9th Cir. 1992).

The Court need not, however, reach the question whether a Magistrate Judge order can ever be given preclusive effect, for WD Energy's collateral estoppel argument fails on a simpler ground.  WD Energy is asserting estoppel against a party (the CFTC) that was not a party to the underlying litigation in the Eastern District of California and therefore never had the opportunity to be heard on the settlement privilege issue.  "The basic premise of preclusion is that parties to a prior action are bound and nonparties are not bound."  18A Charles Alan Wright et al., Federal Practice & Procedure § 4449 (2d ed. 2002 & Supp. 2005).[4]  The CFTC is the recipient of the subpoena, the target of the motion to compel, the holder of the documents at issue, and one of the participants in the settlement negotiations that WD Energy argues gives rise to the privilege.  The CFTC also has a significant interest in the question of whether a settlement privilege protects its documents from disclosure in civil discovery; the answer to that question will have direct implications for the efficiency and the legitimacy of its corporate investigations in the future.

Nonetheless, WD Energy asks this Court to bind the CFTC to a decision on the issue of the settlement privilege -- and therefore prevent the CFTC from disclosing documents in response to an otherwise valid subpoena -- as to which it was not a party and had no opportunity to make known its position.  Specifically, the CFTC was unable to argue in the Eastern District of California that a new privilege is unsupported by the law, is unnecessary to encourage the

---

[4]  Even those variants of collateral estoppel that sit at the outer bounds of the rule -- such as offensive non-mutual collateral estoppel (where "a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff," Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979)), and defensive non-mutual collateral estoppel (where a "defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party," Schneider v. Lockheed Aircraft Corp., 658 F.2d 835, 851 (D.C. Cir. 1981)) -- demand that the party against whom estoppel will be applied had the opportunity to litigate the issue in prior proceedings.  Here, the CFTC never had that opportunity.

settlement of government investigations, and is counter to important principles of open

government and full access to relevant information in civil discovery -- all of which it has since

argued to this Court.[5]  WD Energy admitted at a hearing that it could not cite a case to support its

assertion that the CFTC should be bound by the Eastern District of California order

notwithstanding that it was a non-party to that proceeding.  Tr. of Mar. 11, 2005, Mot. Hg., at 72-

73.  In fact, there is no basis in the law of collateral estoppel or elsewhere for this assertion.  See

Adams v. Bell, 711 F.2d 161, 203 (D.C. Cir. 1983) ("[N]either collateral estoppel nor comity

principles bind nonparties or affect the relief available to them."); Consumers Union of the United

States v. Consumer Prod. Safety Comm'n, 590 F.2d 1209, 1217 (D.C. Cir. 1978) ("Furthermore,

the doctrine of collateral estoppel, which does bind parties to a previous suit to such

determinations of material issues as are encompassed in the judgment, only rarely precludes

nonparties from litigating the same issues afresh."), rev'd on other grounds sub nom. GTE

---

[5]  Inevitably, there will be some situations where the disposition of CFTC settlement documents will be resolved without the CFTC having had an opportunity to become involved -- for example, where the court presiding over the underlying litigation (to which the CFTC is not a party) orders the documents released, and the CFTC would have taken the position (if given the opportunity) that release is inappropriate.  To recognize that there will be *some* cases in which the CFTC will (as a practical matter) not have an opportunity to make its views known regarding documents of concern to it, however, does not imply that collateral estoppel should be expanded as a legal matter to prevent the CFTC from having an opportunity to make its views known in *every* case involving documents of concern to it.  In fact, even in the scenario where the CFTC disagrees with the district court's decision to release the documents, there would be many reasons why the CFTC would want the opportunity to contend that it should not be required to disclose the documents as a matter of law (even though the forum court held that the private party in the possession of the documents must disclose them).  For instance, the disclosure in the underlying litigation would likely be governed by a protective order, and the CFTC might well be concerned about the wider disclosure that could result from a FOIA request directed at the CFTC for the same documents.

<u>Sylvania, Inc. v. Consumers Union of U.S., Inc.</u>, 445 U.S. 375 (1980).[6]  Accordingly, the Court

will not give preclusive effect to the decision of the Eastern District of California in this case.[7]

## II.    Settlement Privilege

In the alternative, WD Energy asks this Court itself to recognize a settlement privilege

under federal law that would protect the documents in this case from third-party discovery.

Quoting extensively from <u>Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.</u>, 332 F.3d

976 (6th Cir. 2003), in which the Sixth Circuit recently recognized such a privilege, WD Energy

argues that there "exists a strong public interest in favor of secrecy of matters discussed by parties

during settlement negotiations" because the "ability to negotiate and settle a case without trial

---

[6]  The circumstances in which collateral estoppel may bind a non-party are generally confined to cases where the non-party participated in the prior litigation, Wright, et al., <u>supra</u>, § 4451, the non-party authorized a party to represent its interests in the prior litigation, <u>id.</u> § 4453, and certain exceptional cases where a non-party should have participated in the prior litigation but did not (although this approach "remains much more a creature of commentary than of cases"), <u>id.</u> § 4452.  WD Energy does not argue that any of these circumstances exist here.

[7]  The Court recognizes that its decision not to give collateral estoppel effect to the Eastern District of California decision has the consequence of giving Gallo two bites of the apple on access to the documents.  This issue -- to the extent it is an issue at all -- arises any time a party seeks  documents that are held not only by the opposing party, but also by a third party without any other relationship to the litigation.  WD Energy cannot any law suggesting that the collateral estoppel doctrine has a role in addressing this situation.  Courts ruling on third party subpoenas do often afford some limited degree of deference -- short of absolute preclusive effect -- to the decision of the forum court on issues of discovery.  <u>See</u>, <u>e.g.</u>, <u>Fincher v. Keller Indus., Inc.</u>, 129 F.R.D. 123, 125 (M.D.N.C. 1990) ("Even though this Court is the proper one to rule on plaintiffs' motion, it nevertheless will look at the status of the proceedings in the district where the action is pending and at relevant rulings issued by that court.").  Consistent with this law, the Court has looked carefully at the Eastern District of California ruling in reaching its conclusion, although the Court notes that the conventional deference to a forum court in the third party subpoena context might be diminished in this context in light of the fact that the CFTC has a strong interest in the disposition of the documents in this case that is distinct from the interests of either of the parties in the underlying litigation, a fact that distinguishes this case from the normal third party subpoena context.

fosters a more efficient, more cost-effective, and significantly less burdened judicial system," and that "[w]ithout a privilege, parties would more often forego negotiations for the relative formality of trial."  WD Energy Mem. at 15 (quoting <u>Goodyear Tire</u>, 332 F.3d at 983).  WD Energy maintains that these policies "would be totally undermined here if WD were forced to disclose communications made to the CFTC in furtherance of settlement."  <u>Id.</u>  Both the CFTC and Gallo urge the Court to reject the application of any settlement privilege to the WD Energy documents at issue here.

The federal courts do not enjoy unbridled authority to define new privileges in discovery whenever they see fit.  Federal Rule of Evidence 501 authorizes federal courts to recognize new privileges only by interpreting "the principles of the common law . . . in the light of reason and experience."  Fed. R. Evid. 501.  As the Supreme Court has noted:  "When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional."  <u>Jaffee v. Redmond</u>, 518 U.S. 1, 9 (1996) (quotation omitted).  Hence, while Rule 501 directs courts to "continue the evolutionary development of testimonial privileges," <u>id.</u> at 9-10, the Supreme Court has "warned that testimonial privileges 'are not lightly created nor expansively construed, for they are in derogation of the search for truth.'"  <u>In re Grand Jury Subpoena</u>, 397 F.3d 964, 984 (D.C. Cir. 2005) (Henderson, J., concurring) (quoting <u>United States v. Nixon</u>, 418 U.S. 683, 710 (1974)); <u>see also</u> <u>Univ. of Pennsylvania v. EEOC</u>, 493 U.S. 182, 194 (1990) ("Although Rule 501 manifests a congressional desire not to freeze the law of

privilege . . . we are disinclined to exercise this authority expansively.").[8]

The Supreme Court has identified several factors that should be considered when assessing a proposed privilege under Rule 501. First, the Court has asked whether there exists a broad consensus in federal and state law in favor of the privilege. See Jaffee, 518 U.S. at 12 (emphasizing that "all 50 States and the District of Columbia have enacted into law some form of psychotherapist privilege"); In re Sealed Case, 148 F.3d 1073, 1077 (D.C. Cir. 1998) ("The Supreme Court has put considerable weight upon federal and state precedent when recognizing a privilege."). Second, the Court has considered whether "Congress has considered the relevant competing concerns but has not provided the privilege itself." Univ. of Pennsylvania, 493 U.S. at 194. Third, the Court has consulted the list of evidentiary privileges recommended by the Advisory Committee of the Judicial Conference in its proposed Federal Rules of Evidence. See Jaffee, 518 U.S. at 14; United States v. Gillock, 445 U.S. 360, 365 (1980). Finally, "[t]he Supreme Court has instructed that a party seeking judicial recognition of a new evidentiary privilege under Rule 501 demonstrate with a high degree of clarity and certainty that the proposed

---

[8] Thus, courts in recent years have declined to recognize a privilege for the identity of reporters' confidential sources, In re Grand Jury Subpoena, 397 F.3d at 972-73; child abuse records, Pearson v. Miller, 211 F.3d 57, 68 (3d Cir. 2000); parent-child communications, In re Grand Jury, 103 F.3d 1140, 1149 (3d Cir. 1997); academic peer-review records, Univ. of Pennsylvania, 493 U.S. at 189; documents relating to the protective function of the Secret Service, In re Sealed Case, 148 F.3d 1073, 1076 (D.C. Cir. 1998); corporate ombudsman records, Carman v. McDonnell Douglas Corp., 114 F.3d 790, 794 (8th Cir. 1997); communications between an insurer and an insured, Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1514 (D.C. Cir. 1993); and records of unemployment hearings, EEOC v. Illinois Dep't of Employment, 995 F.2d 106, 108 (7th Cir. 1993); see generally In re Grand Jury, 103 F.3d at 1149 ("[T]he Supreme Court has rarely expanded common-law testimonial privileges. Following the Supreme Court's teachings, other federal courts, including this court, have likewise declined to exercise their power under Rule 501 expansively."); Linde Thomson, 5 F.3d at 1514 ("[F]ederal courts should not create evidentiary privileges lightly.").

privilege will effectively advance a public good."  In re Sealed Case, 148 F.3d at 1076.

WD Energy has not come forward with a persuasive case for a federal settlement privilege under any of these factors.  See Alexander v. Fed. Bureau of Investigation, 186 F.R.D. 154, 167 (D.D.C. 1999) ("The party claiming privilege has the burden to establish its existence." (quotation omitted)).  WD Energy is unable to demonstrate a broad consensus in federal court in support of such a privilege.  A few federal cases have recognized a settlement privilege.[9]  On the other hand, at least two federal cases have not recognized a privilege as such, but have instead required a heightened showing of need for settlement documents on public policy grounds,[10] and a substantial number of cases have rejected such a privilege.[11]  The cases rejecting a privilege

_____

[9]  See Goodyear Tire, 332 F.3d at 983 ("[A]ny communications made in furtherance of settlement are privileged."); Allen Cty. v. Reilly Indus., Inc., 197 F.R.D. 352, 353 (N.D. Ohio 2000) (noting the "well-established privilege relating to settlement discussions"); Cook v. Yellow Freight Sys., 132 F.R.D. 548, 554 (E.D. Cal. 1990) ("[T]here is a well-established privilege relating to settlement discussions that the court finds applicable to this particular motion."); Olin Corp. v. Ins. Co. of N. Am., 603 F. Supp. 445, 449-50 (S.D.N.Y. 1985) (holding that "the settlement privilege prevented INA from obtaining discovery of an amendment to the Wausau policy concerning the extent to which Wausau would pay defense costs").

[10]  See Butta-Brinkman v. FCA Int'l, Ltd., 164 F.R.D. 475, 476 (N.D. Ill. 1995) (holding that the "strong congressional policy favoring settlement weighs in favor of keeping such documents protected, so long as the information is available through other means"); Botaro v. Hatton Ass'n, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (holding that the movant has the burden of making "some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement").

[11]  See, e.g., In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1124 (7th Cir. 1979) (finding "no convincing basis" for proposition that "the conduct of the settlement negotiations is protected from examination by some form of privilege," although acknowledging that some materials could be protected from discovery as attorney work product or as privileged attorney-client communications); Primetime 24 Joint Venture v. Echostar Communications Corp., 2000 WL 97680, at *4 n.5 (S.D.N.Y.) ("[W]e agree with defendants' observation that Fed.R.Evid. 408 does not create a settlement privilege."); Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (Rule 408 "only applies to the admissibility of evidence at trial and does not necessarily protect such evidence from discovery"); Bennett v. La

include at least two decisions in this Court that have found no settlement privilege for purposes of

Exemption 5 of FOIA (which protects from disclosure certain documents that "would not be

available by law to a party other than an agency in litigation with the agency"),[12] and one case in

this Court decided just before the Federal Rules of Evidence became effective that did not find a

settlement privilege in the common law as it stood at that point.[13]   Whatever else might be said

about this legal landscape, it does not reflect a consensus of support for a settlement privilege in

federal court.[14]

    Nor can such a consensus be found in state law.  See The New York Times Co. v.

Gonzales, 2005 WL 427911, at *34 (S.D.N.Y.) ("[T]he absence of unanimity among the federal

courts as to a particular privilege under Rule 501 does not preclude recognition of the privilege in

---

Pere, 112 F.R.D. 136, 138-39 (D.R.I. 1986) (rejecting contention that some "particularized
showing" of need is necessary to obtain settlement documents in discovery).

    [12]  See NAACP Legal Def. & Educ. Fund v. U.S. Dep't of Justice, 612 F. Supp. 1143, 1146
(D.D.C. 1985) (rejecting argument that "a settlement negotiation privilege exists under FRE
408"); Ctr. for Auto Safety v. Dep't of Justice, 576 F. Supp. 739, 751, 753 (D.D.C. 1983) ("There
is no clear congressional intent to include a settlement negotiation privilege within Exemption 5. .
. . [Rule 408] limits a document's relevance at trial, not its disclosure for other purposes."),
vacated in part on other grounds, 1983 WL 1955 (D.C. Cir. 1983); see also Philadelphia
Newspapers, Inc. v. Dep't of Health & Human Servs., 69 F. Supp. 2d 63, 67-68 (D.D.C. 1999)
(Robertson, J.) (requiring disclosure of settlement documents under FOIA).

    [13]  See Oliver v. Comm. for Re-Election of the President, 66 F.R.D. 553, 556 (D.D.C.
1975) ("While offers of settlement (and presumably also negotiations which led to such offers) are
clearly not admissible at trial for a number of public policy reasons, such negotiations do not fall
within the confines of the privileges recognized at common law.").

    [14]  See generally Michael Dore, Law of Toxic Torts, App. 8E (1987 & Supp. 2005) ("A
minority of courts have recognized a 'settlement privilege' that protects settlement
communications from civil discovery requirements."); Wayne D. Brazil, Protecting the
Confidentiality of Settlement Negotiations, 39 Hastings L.J. 955, 956 (1988) ("[T]he weight of
authority suggests that there is no generalized 'privilege' for settlement communications and that
they are discoverable, at least after a showing of substantial need.").

question where the states have uniformly recognized that privilege."). WD Energy does not even

attempt to show that there is support in state law for a settlement privilege.[15] A review of the law

reveals that several states have expressly declined to recognize a settlement privilege.[16] The Court

is unaware of any cases that recognize such a privilege, and it seems evident, at the very least, that

plaintiffs have not made a showing that there exists a foundation in state law for the new federal

privilege they would have the Court create. Compare Jaffee, 518 U.S. at 12 (recognizing a federal

psychotherapist privilege where "all 50 States and the District of Columbia have enacted into law

some form" of the privilege), with Trammell v. United States, 445 U.S. 40, 50 (1980) (declining

to recognize a federal privilege against adverse spousal testimony where only 24 states allowed an

accused to prevent adverse spousal testimony).

Turning to the question of whether Congress considered the relevant issues and declined to

create a privilege itself, Federal Rule of Evidence 408 is instructive. The Rule provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or
> offering or promising to accept, a valuable consideration in compromising or
> attempting to compromise a claim which was disputed as to either validity or
> amount, is not admissible to prove liability for or invalidity of the claim or its
> amount. Evidence of conduct or statements made in compromise negotiations is
> likewise not admissible. This rule does not require the exclusion of any evidence
> otherwise discoverable merely because it is presented in the course of compromise

---

[15]  Neither WD Energy nor the Sixth Circuit in Goodyear Tire examined state law.

[16]  See, e.g., RLI Ins. Co. Group v. Superior Court, 51 Cal. App. 4th 415, 436 (1st Dist. 1996) (settlement documents are discoverable in California state courts); Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc., 725 So.2d 902, 916 (Miss. 1998) (information created during settlement negotiations is discoverable even though not always admissible); Kaeding v. W.R. Grace & Co.-Conn., 961 P.2d 1256, 1261 (Mont. 1998) (same); Allison v. Fire Ins. Exch., 98 S.W.3d 227, 259 (Tex. App. 2002) (although discussions in formal alternative dispute resolution proceedings are generally confidential in Texas, evidence of conduct in settlement negotiations outside of a formal proceeding is discoverable and admissible for purposes other than to show liability).

negotiations.  This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.  Congress clearly enacted[17] this Rule to promote the settlement of disputes outside the judicial process.  See In re Initial Pub. Offering Sec. Litig., 2004 WL 60290, at *4 (S.D.N.Y.) ("Congress was mindful" of the strong public policy in favor of settlement when it enacted Rule 408); Fed. R. Evid. 408 adv. comm. note ("The purpose of this rule is to encourage settlements which would be discouraged if such evidence were admissible."); H.R. Rep. 93-650, available at 1974 U.S.C.C.A.N. 7075, 7081 (explaining that draft of Rule 408 advances goal of "promoting non-judicial settlement of disputes").

However, it is equally plain that Congress chose to promote this goal through limits on the *admissibility* of settlement material rather than limits on their *discoverability*.  See NAACP, 612 F. Supp. at 1146 ("Although the intent of FRE 408 is to foster settlement negotiations, the sole means used to effectuate that end is a limitation on the admission of evidence produced during settlement negotiations for the purpose of proving liability at trial."); Ctr. for Auto Safety, 576 F. Supp. at 753 (Rule 408 "limits a document's relevance at trial, not its disclosure for other purposes.").  In fact, the Rule on its face contemplates that settlement documents may be used for several purposes at trial, making it unlikely that Congress anticipated that discovery into such documents would be impermissible.  As a leading treatise on evidence has explained:

---

[17]  Congress established in 1973 that the proposed Federal Rules of Evidence drafted by the Judicial Conference and endorsed by the Supreme Court would not take effect until expressly appoved by an Act of Congress.  See Pub. L. 93-12, Mar. 30, 1973, 87 Stat. 9.  In 1975, Congress passed a statute approving the Federal Rules.  See Pub. L. 93-595, § 3, Jan. 2, 1975, 88 Stat. 1959.

> The policy of allowing open and free negotiations between parties by excluding
> conduct or statements made during the course of these discussions is not intended
> to conflict with the liberal rules of discovery embodied in the Federal Rules of
> Civil Procedure. . . .   Therefore, a party is not allowed to use Rule 408 as a screen
> for curtailing his adversary's right of discovery.

2 Weinstein's Federal Evidence § 408.07 at 408-26 (2005).  It is not for this Court to rewrite Rule

408 to craft a broader remedy for the precise problem that Congress was attempting to address.

See Folb v. Motion Picture Indus. Pension & Health Plans, 16 F. Supp. 2d 1164, 1179 (C.D. Cal.

1998) (declining to recognize a settlement privilege because "only Congress is authorized to

amend the scope of protection afforded by Rule 408").

The final two considerations highlighted by the Supreme Court also weigh against

constructing a new settlement privilege under federal law.  The privilege was not listed among the

nine privileges identified in the Proposed Federal Rules of Evidence drafted by the Advisory

Commitee of the Judicial Conference, and transmitted by the Supreme Court to Congress in

1972.[18]  See Proposed Rules of Evidence, 56 F.R.D. 183, 234-58 (1972) (recognizing privileges

for reports required by law, the attorney client privilege, the psychotherapist-patient privilege, the

husband-wife privilege, communications to clergymen, political votes, trade secrets, secrets of

state, and informer identity); compare Gillock, 445 U.S. at 365 ("Neither the Advisory

Committee, the Judicial Conference, nor this Court saw fit, however, to provide the privilege

sought by Gillock."), with Jaffee, 518 U.S. at 14 ("The uniform judgment of the States is

reinforced by the fact that a psychotherapist privilege was among the nine specific privileges

recommended by the Advisory Committee in its proposed privilege rules.").

---

[18]  Congress replaced the draft proposed by the Advisory Committee with the present
language of Rule 501.  See Gillock, 445 U.S. at 367.

Nor can it be said that WD Energy has established "with a high degree of clarity and certainty that the proposed privilege will effectively advance a public good." In re Sealed Case, 148 F.3d at 1076.  As the D.C. Circuit recently explained in rejecting a proposed privilege for information obtained by Secret Service personnel while protecting the President:

> Even in cases where the proposed privilege is designed in part to protect constitutional rights, the Supreme Court has demanded that the proponent come forward with a compelling empirical case for the necessity of the privilege. . . . Here, the arguments of the Secret Service, apart from the universally shared understanding that the nation has a profound interest in the security of the President, are based in large part on speculation--thoughtful speculation, but speculation nonetheless.

In re Sealed Case, 148 F.3d at 1075.  To be sure, WD Energy makes a forceful rhetorical argument that a settlement privilege is necessary to preserve the strong public interest in the settlement of disputes, but a compelling argument has been made for the contrary position as well.  See, e.g., Bennett, 112 F.R.D. at 139 ("To suggest, as do these plaintiffs, that the prospect of revealing settlement terms to a narrowly limited audience (nonsettling codefendants and those in privity with them) might impede out of court dispositions seems wrongheaded, given that the alternative to settlement would be a double whammy: the loss of the benefit of the bargain and the more public airing occasioned by a fullblown trial.").

The Court declines to tinker so fundamentally with the rules of litigation based on little more than WD Energy's assertion that it will benefit the public.  See Gillock, 445 U.S. at 375 (rejecting as "speculative" policy arguments in favor of proposed state legislative privilege); Branzburg v. Hayes, 408 U.S. 665, 693-94 & n.32 (1972) (rejecting proposed reporters' privilege because "[e]stimates of the inhibiting effect of [grand jury] subpoenas on the willingness of informants to make disclosures to newsmen are widely divergent and to a great extent

speculative").  Even if the Court would consider accepting this sort of speculative appeal in some

other circumstances, it is particularly inappropriate here, where even the CFTC does not believe a

privilege is necessary to encourage settlement, there is a decided absence of consensus among

federal and state courts on the issue, several entities carefully considered the issue of encouraging

settlements and arrived at a more measured legislative response in Rule 408, and the result will

have implications not only for the course of litigation but also for the openness and effectiveness

of government investigations.  Accordingly, the Court declines plaintiffs' invitation to recognize a

federal settlement privilege, and will order the CFTC to produce the WD Energy documents at

issue to Gallo.[19]

## CONCLUSION

For the reasons stated above, the Court will grant Gallo's motion to compel as to the WD

Energy documents held by the CFTC for which WD Energy has asserted a settlement privilege.  A

separate order will issue herewith.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:    April 28, 2005

---

[19]  The Court therefore does not have occasion to decide whether the documents at issue actually would be covered by any putative settlement privilege, although the Court notes that there is some reason to doubt that all of the documents were created at a phase in the proceedings -- and played a role in the negotiations -- such that they would fall within a properly defined settlement privilege.

Copies to:

Gloria Peele Clement
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581
(202) 418-5120
Fax: 202-418-5524
Email: gclement@cftc.gov
  *Counsel for Commodity Futures Trading Commission*

Jon Cuneo
David W. Stanley
Steven N. Berk
Cuneo Waldman & Gilbert, LLP
317 Massachusetts Avenue, N.E., Suite 300
Washington, D.C.  20002
  *Counsel for E. & J. Gallo Winery*

Diana Weiss
Orrick, Herrington & Sutcliffe LLP
3050 K Street, NW
Washington, D.C.  20007
  *Counsel for Aquila Merchant Services, Inc.*

Richard Liebeskind
Pillsbury Winthrop LLP
1133 Connecticut Avenue, NW
Washington, DC 20036
(202) 775-9838
Fax: (202) 833-8491
Email: rliebeskind@pillsburywinthrop.com
  *Counsel for Dynegy Marketing and Trade*

Richard G. Murphy, Jr.
Sutherland, Asbill & Brennan, L.L.P.
1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
(202) 383-0635
Fax: (202) 637-3593
  *Counsel for Calpine Energy Services, L.P.*

Geoffrey F. Aronow
Heller Ehrman White & McAuliffe LLP
1666 K Street, NW, Suite 300
Washington, DC  20006
 *Counsel for Oneok Energy Services Company, L.P. and Oneok Inc.*

Steven Barentzen
DLA Piper Rudnick Gray Cary
1625 Massachusetts Avenue, NW, Ste. 300
Washington, D.C.  20036-2247
 *Counsel for Williams Companies, Inc. and Williams Power Company*

Kenneth M. Raisler
Sullivan & Cromwell LLP
125 Broad Street
New York, New York  10004
 *Counsel for Entergy-Koch Trading, LP*

Douglas F. John
John & Hengerer
1200 17th Street, N.W.
Washington, DC  20036-3013
 *Counsel for WD Energy Services Inc.*

Peter Romatowski
Jones Day Reavis & Pogue
51 Louisiana Avenue, NW
Washington, D.C.  20001
 *Counsel for e prime, Inc.*

Joel B. Kleinman
Dickstein Shapiro Morin & Oshinsky, LLP
2101 L Street NW
Washington, DC  20037
 *Counsel for Duke Energy Corp.*

Mark Robeck
Baker Botts LLP
The Warner
1299 Pennsylvania Ave., NW
Washington, DC  20004-2400
 *Counsel for Reliant Energy Services, Inc.*